UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JOSEPH DIPINA, | ) | CASE NO. 1:08 CV 1726 |
| | ) | |
| Petitioner, | ) | JUDGE KATHLEEN M. O'MALLEY |
| | ) | |
| v. | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | |
| Respondent. | ) | |

On July 24, 2008, pro se petitioner Joseph DiPina filed the above-captioned habeas corpus action under 28 U.S.C. § 2241 against the Federal Bureau of Prisons ("BOP"). Mr. DiPina, who is incarcerated at the Federal Correctional Institute in Elkton, Ohio ("F.C.I. Elkton"), claims the BOP denied him substantive and procedural due process. For the reasons stated below, the petition for writ of habeas corpus is dismissed.

*Background*

The events which prompted this petition occurred on July 20, 2007. On that date, BOP LAN Administrator Brent Jenson and Information Tech Kevin Gearhart were driving on the grounds of FCC Allenwood, Pennsylvania when they noticed inmate Mykel Dubose speaking to a woman sitting in a parked vehicle on the prison grounds. Mr. Gearhart then searched Mr. Dubose and retrieved a cellular telephone the inmate was holding. He radioed Officer Matthews at FCC

Allenwood, who then arrived to search the area and the female's vehicle. The search recovered 380 packs of tobacco, 45 pounds of creatine powder, numerous bottles of weight lifting supplements and 7 cellular telephones from the trunk of the car.

During a subsequent interview, the woman was identified as Johanny Bonilia. Ms. Bonilia advised that Mr. DiPina directed her to purchase the items the officers recovered and deliver them to Mr. Dubose. The plan was for Mr. Dubose to smuggle the items into USP Lewisburg for subsequent delivery to petitioner. In the course of the interview, Ms. Bonilia's telephone rang approximately 25 times within 40 minutes and each time she identified the caller as Mr. DiPina. A further review of the contacts in her telephone revealed the number of the cellular telephone recovered from Mr. Dubose.

An Incident Report was prepared by FCC Allenwood on October 11, 2007.[1] The report charged Mr. DiPina, an inmate at United States Penitentiary (USP) Lewisburg, Pennsylvania at the time, with Code violations 199/197 ("conduct which disrupts/use of the telephone to further criminal activity") and 331 ("possessing/introducing contraband (attempted)"). A copy of the report was delivered to petitioner on October 27, 2007 at 10:00 a.m. The Unit Disciplinary Committee (UDC) referred the charges against Mr. DiPina to the Disciplinary Hearing Officer (DHO) on October 30, 2007 for further hearing. On the same date, Mr. DiPina was advised of his rights before the DHO.

A hearing was held before the DHO on December 17, 2007. Mr. DiPina declined representation and denied the charges against him. Petitioner asserted that he understood his rights,

---

[1] A duplicate report was prepared by USP Lewisburg charging petitioner with Code 199/197 and 331A violations.

but protested the fact that it took more than 24 hours from the date the report was written for the BOP to deliver it to him. Consequently, he maintained that the report should be expunged because it violated BOP policy with regard to the time limits for notifying a prisoner that he has violated a BOP Code provision. In addition, he complained that neither the reporting officer nor the UDC explained the 16 day delay in his receipt of the incident report. Finally, he challenged being charged with a Code 331 violation when he believed the prohibited act should have been Code 331A.

After interviewing several staff members at FCC Allenwood and USP Lewisburg, the DHO determined that, after the incident report was written by a staff member at FCC Allenwood, he forwarded it to USP Lewisburg staff. This occurred on the date it was written, October 11, 2007. Someone at either FCC Allenwood or USP Lewisburg held the incident report until the SIS Investigation supporting the incident report was received on October 27, 2007. The USP Lewisburg Lieutenant who investigated the matter stated that he found the report on his desk the morning of October 27, 2007 when he arrived at work. On the same date, he delivered a copy of the report to Mr. DiPina.

While the DHO acknowledged that it was BOP policy to deliver an incident report to an inmate within 24 hours after it is issued, he noted that the due process issue turned on whether Mr. DiPina received the report at least 24 hours before his DHO hearing. The record reflected and Mr. DiPina admitted he received a copy of the written report several weeks before the DHO hearing. When the DHO queried how petitioner was prejudiced when he had several weeks to prepare his defense, Mr. DiPina stated that he was not prejudiced by the delay but, as a matter of principle, believed that BOP personnel should be required to strictly follow policy, just like the inmates.

With regard to the charges brought against Mr. DiPina, the DHO determined that the

3

failure to charge him with "attempted" violations did not render the original charges invalid.  The DHO did ultimately determine that petitioner violated Codes 108A and 331A, because they involved facts relevant to petitioner's circumstance.[2]  Regardless of whether the acts were originally charged as "attempted," the DHO reasoned that the petitioner was provided adequate detail of the events which prompted the charge.

During the course of the DHO hearing, Mr. DiPina failed to provide any documentary evidence to support his innocence.  While petitioner defended himself by reading extensive hand written notes, he declined to enter these documents as evidence.  He sustained his refusal even after the DHO informed him that his statement could be recorded verbatim if he submitted his notes as evidence.

In addition to the written incident report and investigation, the DHO considered a memorandum written by Officer Matthews on October 1, 2007, a memorandum from Jensen dated

---

[2] Petitioner argues that he should have been charged with "attempting" to violate Codes 108 and 331, which state:

> 108    Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade)
>
> 331    Possession, manufacture, or introduction of a non-hazardous tool or other non-hazardous contraband (Tool not likely to be used in an escape or escape attempt, or to serve as a weapon capable of doing serious bodily harm to others, or not hazardous to institutional security or personal safety; Other non-hazardous contraband includes such items as food or cosmetics).

28 C.F.R. §541.13, Table 3--Prohibited Acts and Disciplinary Severity Scale.

September 26, 2007, a memorandum from Gearhart dated September 20, 2007 and photographs of the contraband items recovered. As additional support, reporting officer Matthews advised that on April 23, 2007 a landscape foreman at FCC Allenwood staff searched a horse barn on the reservation and discovered contraband items, including four bags of creatine, a bag of Hydroxycut capsules, baseball cleats, t-shirts, cigarette papers and cellular telephone chargers. He then hid behind some wooden pallets to see if anyone would arrive to retrieve the items. Around 8:45 a.m. three inmates arrived, including Mr. DiPina. The inmates began searching the area of the barn where the contraband was discovered by the foreman. Petitioner was overheard stating: "they got the cell phones." It was at this point that the staff member came forward and directed the inmates to sit on the ground outside the barn entrance. Each inmate was then interviewed by prison staff. At that time, Mr. DiPina denied any involvement and stated he was sent to the barn by his supervisor to collect hay. He also denied making the statement regarding the cell phones.

      The DHO also learned that Ms. Bonilia was a former girlfriend of Mr. DiPina's, in spite of his statement that he barely knew her. Moreover, even though he claims his Inmate Telephone Service would reveal he never called her, Ms. Bonilia stated that her contact with petitioner was exclusively through cell phones. While Mr. DiPina claimed he was working at the time he allegedly called Ms. Bonilia during her interview with prison staff, he also admitted that he worked outdoors and was not under constant supervision. His explanation that she was simply lying to "protect her boyfriend," was refuted by the DHO who noted that if that were her goal she did not need to make a statement at all. In response, "Dipina shrugged his shoulders and again stated Ms. Bonilia was lying, and he didn't know why." (BOP Indt. Rpt. #1660505, at 9.)

      The DHO found Mr. DiPina committed the prohibited acts of attempting to posses

5

hazardous tools, Code 108A, and attempting to possess non-hazardous contraband, Code 331A. He was sanctioned with the loss of 41 days good conduct time, forfeiture of 100 days of non-vested good conduct time, 60 days disciplinary segregation, prison transfer, and 18 months loss of telephone privileges all for violating Code 199, as well as the disallowance of 14 days good conduct time, forfeiture of 30 days non-vested good conduct time, disciplinary segregation for 15 days, disciplinary transfer and an 18 month loss of visiting privileges for violating Code 331.

Appeals were filed by petitioner through to the National Inmate Appeals Administrator, Harrell Watts, who denied his request on June 10, 2008. Mr. Watts determined that the disciplinary procedures were substantially followed.

*Analysis*

Mr. DiPina claims that his substantive and procedural rights to due process were violated by respondents. Citing Wolff v. McDonnell, 418 U.S. 539 (1974), petitioner notes that he is entitled to safeguards before being deprived of good time credits. Specifically, he notes that the BOP took 98 days before it delivered its incident report to him. This, he claims, warrants "vacatur" of the subsequent conviction and sanctions, and "the shot should be expunged in its entirety."[3] (Pet. at 4.) Moreover, once the report was written on October 11, 2007, it took more than 24 hours for the staff to deliver it to him on October 27, 2007, in violation of BOP policy. Petitioner argues that 28 C.F.R. § 541.15(a) requires staff to provide an inmate a copy of the incident report within 24 hours of the time they become aware of the inmate's involvement. He maintains that, because the incident took place on July 20, 2007, or over ninety days before he received a copy of the report, the

---

[3] The court presumes "shot" is a vernacular term for charges outlined in the incident report or the report itself.

charges against him should be nullified.  It is his belief that there is no credible reason for the delay from the time the incident occurred to his receipt of the report.

With regard to the DHO, Mr. DiPino argues he was inappropriately acting in a dual capacity as an investigator and hearing officer.  Citing Wolff, he notes that the prison disciplinary board must be impartial to satisfy the requirements of due process.  In this case, he claims the DHO inserted himself in the process when he investigated the status of the incident report before it reached petitioner and later learned of an earlier incident involving petitioner in April 2007. Mr. DiPina claims the DHO overstepped his boundaries.

Contrary to paragraph III, E. of the incident report as well as the declaration of the DHO, Mr. DiPino believes Ms. Bonilia is a confidential informant  As such, he asserts that her credibility should have been subjected to certain criteria that he believes she failed.  Furthermore, he "is of the opinion that he should have been allowed to question Ms. Bonilia somehow." (Pet. at 7.)  He writes that it was the "hope" of the Supreme Court in Baxter v Palmigiano, 425 U.S. 308 (1976) that informants and witnesses would be subject to cross-examination and confrontation during the prison disciplinary process.  As Mr. DiPino concedes, however, that is not what the law requires.

*28 U.S.C. § 2241*

Mr. DiPina is seeking relief available only under 28 U.S.C. § 2241. An inmate's challenge to the manner in which a sentence is executed, rather than the validity of the sentence itself, may only be brought under § 2241. See Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir.1998).  Although the events about which petitioner complains occurred while he was incarcerated within the District Court of Pennsylvania's personal jurisdiction, Mr. DiPina was

transferred to Ohio before he filed his petition in this court. As the District Court of Pennsylvania has no jurisdiction over prison officials in Ohio, see Wright v. United States Bd. of Parole, 557 F.2d 74, 76-77 (6th Cir.1977), petitioner's custodian is located within the Northern District of Ohio, this court has personal and subject matter jurisdiction over his challenge to the BOP's forfeiture of his good credit time. See Perez v. Hemingway, 157 F.Supp.2d 790, 793 (E.D. Mich. 2001).

*Due Process*

The requirements of due process are satisfied if "there was some evidence from which the conclusion of the administrative tribunal could be deduced....". United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S.103, 106 (1927). The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. The revocation of good time credits is not comparable to a criminal conviction, Wolff, 418 U.S. at 556, and neither the amount of evidence necessary to support such a conviction, see Jackson v. Virginia, 443 U.S. 307 (1979), nor any standard greater than "some evidence" applies in this context. Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 456 (1985).

Prisoners facing a loss of good-time credits must be given (1) advance written notice of the disciplinary charges, (2) an opportunity to present witness testimony and other evidence when such allowance is consistent with safety and correctional goals, and (3) a written statement of reasons for the disciplinary action taken. Id. at 454. No more is required to satisfy due process.

It is clear from the record that petitioner cannot sustain a claim that he was denied due process. There is no disagreement that he received advance written notice of the charges filed against him. While the court understands that petitioner is frustrated by the notion that prison staff

would not be required (like inmates) to follow policy to the 'letter', respondents failure to do so simply does not elevate the matter to a constitutional level or give rise to the relief petitioner seeks. The DHO explained that an SIS investigation was being conducted between the time the incident report was written and the date it was delivered to Mr. DiPina.  More importantly, however, petitioner never argued that he was prejudiced by the delay. Relevant case law requires a showing of 'prejudice' resulting from any challenged delay. See Mazzanti v. Bogan, 866 F. Supp. 1029, 1034 (E.D. Mich. 1994)(habeas relief not warranted where petitioner failed to show delay actually prejudiced him).  Mr. DiPina has not shown any prejudice resulting from the alleged delays in his receipt of the incident report, or in the completion of the investigative report. The alleged delays, therefore, do not warrant habeas corpus relief. See Northington v. U.S. Parole Commission, 587 F.2d 2, 3-4 (6th Cir.1978); Donn v. Baer, 828 F.2d 487, 490 (8th Cir.1987).

       While he may disagree with the DHO's findings, a full narrative of the reasons upon which the DHO based his decision is provided on the incident report. The core of Mr. DiPina's challenge stems from his claim that Ms. Bonilia was lying.  This contention is merely a claim that the DHO's decision was not supported by reliable evidence. A federal court's review of the quantum of evidence supporting a prison disciplinary board's decision is limited to determining whether some evidence supports the decision. Hill, 472 U.S. at 455. The court is not permitted to re-weigh the evidence presented to the DHO. Id. When disciplinary cases are involved, prison officials' determinations must be made quickly and in a highly charged atmosphere. Id. at 456.  The "Constitution does not require evidence that precludes any conclusion but the one reached by the disciplinary board." Id. at 457.

       The evidence considered by the DHO, as confirmed by the disciplinary records and

9

summarized above, reflects that petitioner was involved in an attempt to smuggle contraband into the prison.  During the hearing, he had the opportunity to be represented by a staff member and to call witnesses on his behalf.  Mr. DiPina did not exercise either option.  He also failed to present any documentary evidence to the DHO to support his claim of innocence or of Ms. Bonilla's alleged prevarication. These facts, combined with the reporting officer's testimony and the DHO's findings, constitute far more evidence than the minimal "some evidence" necessary to convict an inmate of a prison disciplinary infraction in compliance with due process. The record is not so devoid of evidence that the findings of the disciplinary board were without support or were otherwise arbitrary. Hill, 472 U.S. at 457.

There is also no support for Mr. DiPina's claim that he was unaware of the precise charges filed against him.  There is nothing in the record or set forth in the petition which suggests Mr. DiPina was unable to defend himself against the charges or misunderstood them.  The Court finds that Mr.  DiPina was afforded all the process that was due in these proceedings and that the DHO had the discretion to impose the sanctions it did, all of which were consistent with governing regulations.

*Conclusion*

Based on the foregoing, the petition is dismissed pursuant to 28 U.S.C. § 2243. Petitioner's motion to proceed in forma pauperis is granted. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

 s/ Kathleen M. O'Malley
KATHLEEN M. O'MALLEY
UNITED STATES DISTRICT JUDGE

DATED:  October 10, 2008